Commercial Delivery Service, Inc., Appellee, v. Cornelius J. Medema et al., and John B. Brenza, as County Treasurer of Cook County, Illinois, Defendants.

Appeal of Cornelius J. Medema et al., Appellants.

### Gen. No. 46,643.

First District, First Division.

October 31, 1955.

Released for publication November 16, 1955.

Fischer, Bosgraf, and Mackenzie, of Chicago, for appellants; Leonard Bosgraf, and Kellam Foster, both of Chicago, of counsel.

Melvin E. Levinson, and Louis Rosenfeld, both of Chicago, for appellee; Daniel L. Abrams, of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

On March 24, 1953, a condemnation proceeding was instituted by the City of Chicago in Trust for the use of Schools to ascertain just compensation to the owners of or parties interested in certain land and the improvements thereon. The land sought to be condemned included parcel 17, then owned in fee simple by Cornelius and Winifred Medema and William and Henrietta Bandstra, is commonly known as 2933–43 South Calumet Avenue, and is at the southeast corner of Calumet Avenue and 29th Place, Chicago. It has a frontage of 125 feet on Calumet Avenue and runs to a depth of 174 feet. A brick building occupied all except the east 55 feet of the parcel. The east 55 foot space was used for parking. The building contained 14,850 square feet on the first floor and about 400 square feet of balcony devoted to offices and washrooms. On May 3, 1952, the owners delivered to Commercial Delivery Service, Inc., a lease of the premises solely for the operation of a general delivery, trucking and cartage service, for 5 years from May 5, 1952, to May 5, 1957, at $750 per month rental until May 5, 1954, and $850 per month thereafter with the privilege of renewal for 5 years at $850 per month.

The owners and the lessee entered their separate appearances in the condemnation case. On June 15, 1953, a jury having been sworn to ascertain and report the just compensation to be made to the "owner or owners of and party or parties interested" in the premises sought to be taken, found the just compensation to the owner or owners of or party or parties interested in parcel 17 to be $82,500. Thereupon the court entered judgment which ordered that the petitioner within 90

days pay to the County Treasurer "for the benefit of the owner or owners of and party or parties interested in said real property" the amount found by the jury, plus costs, as full compensation. The judgment order further stated that upon proof to the court that payment "has been made to the County Treasurer" the petitioner may enter upon the land and use the same for the purpose stated in the petition. The amount of the condemnation judgment was deposited with the County Treasurer on the day of the judgment.

The lessee, hereinafter called the plaintiff, filed a complaint and an amended complaint in chancery against the owners, hereinafter called the defendants. Plaintiff claimed the value of the leasehold estate and the value of certain items which had been acquired by the condemnor. It prayed for a hearing to determine the rights of the parties to the condemnation award which, it asserted, was held in trust by the County Treasurer for the parties interested therein. Defendants' answer stated that the judgment in the condemnation suit was entered pursuant to agreement between petitioner therein and the defendants (owners) as compensation to defendants for the property after the plaintiff, who was a defendant in that proceeding and represented by counsel, was advised by the petitioner that it was entitled to nothing, and that plaintiff had an adequate remedy at law. The master in chancery to whom the case was referred found the value of a loading dock to be $1,057.04 and the value of the leasehold to be $6,800, a total of $7,857.04, and recommended that the County Treasurer be required to pay the plaintiff that amount. Exceptions to the report were overruled and the chancellor entered a decree in accordance with the recommendation. Defendants, appealing, ask that the decree be reversed and that the complaint be dismissed for want of equity.

■ ■ Defendants maintain that plaintiff had an adequate remedy at law in the condemnation proceed-

ing, failed to avail itself of that remedy therein and has shown no excuse for its failure to do so. Defendants state that the judgment for $82,500 in the condemnation proceeding was entered pursuant to negotiations and agreement between them and the condemnor solely on behalf of the defendants, and that in that proceeding plaintiff through its counsel negotiated with the condemnor, and was advised by the condemnor that plaintiff was entitled to nothing. In Lambert v. Giffin, 257 Ill. 152, the court said (158):

"Where it becomes necessary for the jury to assess damages for separate interests in condemnation proceedings, it is the duty of the jury to first fix the fair cash market value of the entire property as between the petitioner and all the defendants, and then to divide the same according to the respective rights of the defendants."

In the condemnation proceeding involving the property in the instant case the parties and the court did not follow the practice of fixing the fair cash market value for the entire property as between the petitioner and all the defendants and dividing the amount according to the respective rights of the defendants. The court followed the practice outlined in Section 14 of the Eminent Domain Act (Par. 14, Ch. 47, Ill. Rev. Stat. 1953 [Jones Ill. Stats. Ann. 109.259]) that payment of compensation adjudged may be made to the County Treasurer who shall, on demand, pay the same to the party thereto entitled. The jury made a gross award to all "parties in interest." No party to the condemnation proceeding requested apportionment of the award in that proceeding. The statute does not make it mandatory that the jury shall apportion the award. In City of Chicago v. Gage, 268 Ill. 232, the court said that if the property is taken for public use the compensation money is deemed a substitute for the property, and a mortgagee or other lien holder has an equitable lien

on the fund to the extent of his claim. See also Yellow Cab Co. v. Howard, 243 Ill. App. 263. The parties in the condemnation case were satisfied to have the verdict and judgment in that case recite that the amount to be deposited with the County Treasurer be paid to the owner or owners and to the parties interested in the real estate in order to compensate the owners and the parties interested for the taking of the real estate. The judgment in that case contemplated that any dispute about the apportionment of the amount deposited be settled by further proceedings. The defendants are in no position to urge a contrary view. We are satisfied that the chancellor was right in apportioning the amount deposited according to the rights of the parties.

■■ The value of plaintiff's leasehold is the fair rental value of the property as of March 24, 1953, the day the condemnation petition was filed, less rent covenanted in the lease to be paid. Defendants say that the evidence shows the fair rental value of the property to be $9,000 per year, the rent stated in the lease $9,000 per year for the first two years and $10,200 per year for the remaining three years of the term, $1,200 in excess of the rental value, and that the leasehold has no compensable value. The decree found that the lease had a value of $1,700 per year and that its value is $6,800. In Corrigan v. City of Chicago, 144 Ill. 537, the court said that the measure of compensation for the estate of the tenant taken is the value of the leasehold estate, subject to the rent covenanted to be paid, and that if the value exceeds the rental he will be entitled to recover the excess, and if it does not exceed the rent reserved, he will be entitled to nothing. The evidence introduced by the defendants shows that the fair cash market rental value of the property as of March 24, 1953, was $9,000 per year or 60¢ a square foot, equal to or less than the rent stated in the lease. Plaintiff introduced an experienced real estate broker who testified that the rental value of the property was $11,900 per

year based on an area of 14,875 square feet at 80¢ per square foot. In this valuation he included the loading dock. The only other witness for the plaintiff on the valuation was Mr. Harry Dee, its vice president and treasurer. He testified that his corporation rented a garage 3-½ blocks from the Calumet Avenue property. The property newly rented was a "much older" building which needed tuckpointing, had no available parking space, a 1,000 gallon storage tank in place of a 5,000 gallon storage tank, had no loading docks within it, and its "deplorable roof" was an old-fashioned skylight roof. He said "there are many holes in the building and it is almost impossible to keep it warm." He testified that plaintiff is paying 75¢ a square foot for this property, and that based upon this and his general experience in renting this type of property, the condemned property had a value of 80¢ to 90¢ per square foot for leasing purposes. After a careful consideration of the testimony of all the witnesses we are unable to say that the finding in the decree as to the valuation of the leasehold is contrary to the manifest weight of the evidence.

 Defendants assert that the testimony of plaintiff's real estate valuation witness regarding the value of leasehold property at California and Barry Avenues, about 11 miles from the property taken, was incompetent owing to the dissimilarity of the properties. We think that because of the distances and the dissimilarity the testimony as to the California and Barry Avenue property should have been excluded. Without this incompetent testimony we find that there is sufficient evidence to sustain the finding in the decree as to valuation.

 Mr. Dee testified that he looked at many other properties in the area, that one owner asked $1 a square foot and that the landlord of the premises subsequently leased first asked 90¢ a square foot. In Department of Public Works v. Lambert, 411 Ill. 183, 191,

the court said that the rule is established in this State that, in the absence of evidence of actual sales, bona fide offers to purchase for cash by persons able to buy are some evidence of what the property would sell for; that the bona fide character of the offer is a preliminary question which must be decided by the court; and that the burden is upon the party seeking to have such evidence admitted to establish a sufficient foundation by showing that the offer was bona fide and made by a person able to comply with the offer if it were accepted. The defendants interposed no objection at the time this testimony was taken. There was no attempt to qualify the witness under the rule mentioned in the Lambert case. We do not feel that the defendants were harmed by the testimony. We do not find any objection to the testimony of this witness about the rental paid at the new location, that he had experience in leasing properties of the type of the Calumet Avenue property, and that the fair cash market value of the rental was 80¢ to 90¢ a square foot.

The decree allowed the plaintiff $1,057.04 as the value of a loading dock. The defendants argue that the loading dock is not compensable out of the condemnation fund because it is personal property. Plaintiff maintains that the value of the loading dock was included in the condemnation award and that it is personal property. As personal property the plaintiff would have a right to remove the loading dock. The condemnor, in taking the land, did not take any personal property. We accept the finding of the master and the chancellor that the loading dock became part of the real estate and that it was taken. Plaintiff's real estate valuation witness testified that his valuation of the leasehold interest at 80¢ a square foot was based on the real estate with the dock included. The decree finds the value of plaintiff's leasehold to be $6,800. This necessarily included the value of the loading dock. The lease provides that "all alterations and additions

to said premises shall remain for the benefit of the lessor." In the Corrigan case (144 Ill. 537) the court said (550):

"It was error, therefore, to instruct the jury that the tenants, as compensation for their leasehold estates in the land, were entitled to the value of the buildings placed thereon. . . . It is clear, we think, that the true measure of the compensation, as their rights and interests are defined and fixed by the leases, was the value of their respective leasehold estates in their condition at the time of the filing of the petition for condemnation, including the use and enjoyment of the buildings and ground, . . ."

The separate allowance to plaintiff for the loading dock was unauthorized.

For the reasons stated the decree is modified by striking out the finding and order that plaintiff is entitled to anything for the taking of the loading dock and by reducing the amount required to be paid to plaintiff by the County Treasurer in Paragraph 4 to $6,800, and as modified, the decree is affirmed.

Decree modified and as modified affirmed.

FRIEND, P. J. and NIEMEYER, J., concur.